UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HERARDO ORTIZ, )
)
)
Plaintiff, )
)
v. )                Civil Action No. 12-1674 (TFH)
)
UNITED STATES DEPARTMENT OF JUSTICE, )
)
Defendant. )
)

## MEMORANDUM OPINION

This matter is before the Court on defendant's Motion for Summary Judgment [ECF No. 22].[1] For the reasons discussed below, the motion will be granted.

## I. BACKGROUND

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against the United States Department of Justice ("DOJ") for the purpose of obtaining information about his criminal case that purportedly is maintained by the Drug Enforcement Administration ("DEA"). *See* Complaint for Declaratory and Injunctive Relief [ECF No. 1]

---

[1] The Court will deny plaintiff's Motion for Summary Judgment Upon Defendant's Failure to Comply with This Court's Order and Due Date to File An Answer to Plaintiff's Complaint [ECF No. 26], and instead construe the submission, along with plaintiff's Amended Response to Defendant's Motion for Summary Judgment [ECF No. 27], as plaintiff's opposition to Defendant's Motion for Summary Judgment and Amended Motion for Summary Judgment [ECF Nos. 22-23]. In addition, the Court will deny Defendant's Amended Motion for Summary Judgment [ECF No. 23]. Its sole purpose apparently is to include an exhibit, a Vaughn index, in support of defendant's motion. The Court will consider the exhibit (designated by the Court as "Pavlik-Keenan Decl., Ex. C") together with the declaration of Catrina Pavlik-Keenan regarding documents originating with U.S. Immigration and Customs Enforcement.

("Compl.") ¶¶ 1-2, 4; Motion for Summary Judgment Upon Defendant's Failure to Comply with

This Court's Order and Due Date to File an Answer to Plaintiff's Complaint [ECF No. 26] at 1.

### A. DEA FOIA Request No. 12-00038-P

In relevant part, plaintiff's request to the DEA read:

> This is a non-commercial request for information pursuant to [the FOIA] for a copy of all records in the possession of [the DEA] concerning specifically:
>
> Mag. No. L-04-228 TM-01
>
> DEA FILE NO.:    M6-04-0273
>
> DEA S/A RHUE    DEA FORM 6
>
> DATED:    03/12/2004
>
> any other investigative reports filed by any other federal agent in regards to United States v. Herardo Ortiz, Southern District of Texas (Laredo Division), criminal case number: 5:08-0031-1[.]

Memorandum in Support of Defendant's Motion for Summary Judgment [ECF No. 22-1]

("Def.'s Mem."), Declaration of Katherine L. Myrick ("Myrick Decl."), Ex. A (Freedom of

Information Act/Privacy Act Request dated October 14, 2011) at 1. The DEA's initial response

to the request was the release of 48 pages of records in part and the withholding of two pages in

full. *Id.* ¶ 7; *see id.*, Ex. C (Letter to plaintiff from Katherine L. Myrick, Chief, Freedom of

Information/Privacy Act Unit, FOI/Records Management Section, DEA, dated June 21, 2012) at

2. The DEA also referred two pages of records to U.S. Immigration and Customs Enforcement

("ICE"), *id.* ¶ 9, and three pages to the Executive Office for United States Attorneys

("EOUSA"), *id.* ¶ 10, for direct responses to plaintiff.

In addition, the DEA forwarded 12 pages of records to the Bureau of Customs and Border

Protection ("CBP") "as a consultation, for review and return" to the DEA, and referred six

additional pages of records to the CBP for its review and direct response to plaintiff. *Id.* ¶ 8; *see id.*, Ex. D (Letter to Mark Hanson, Director, FOIA Division, CBP from Katherine L. Myrick dated June 21, 2012). The DEA informed plaintiff that he would be "notified if more material [became] available for release pending results from the consultation." *Id.*, Ex. C at 1.

The CBP returned to the DEA the twelve pages of records referred on June 21, 2012, along with "[a]n additional four pages belonging to the Office of Border Patrol." *Id.*, Ex. G (Memorandum to Katherine L. Myrick from Dale G. Martin, Acting Director, FOIA Division, Office of International Trade, CBP, dated July 13, 2012). The DEA, in turn, released to plaintiff these 12 pages of records in redacted form, relying on FOIA Exemptions 6, 7(C), 7(E) and 7(F). *Id.* ¶ 12; *see generally id.*, Ex. H (Letter to plaintiff from Katherine L. Myrick dated August 1, 2012). With respect to the remaining six pages of records, the CBP returned them to the DEA rather than responding directly to plaintiff. *See* Def.'s Mem. at 2 n.3; Myrick Decl. ¶¶ 12-13; *see id.*, Ex. H. These pages were included in the DEA's June 14, 2013 response to plaintiff. *See* Def.'s Mem. at 2 n.3; Myrick Decl. ¶ 13.

DEA staff determined that plaintiff's request "could be interpreted in several ways," for example, as one for "a particular DEA Form 6 created on March 12, 2004, by DEA Special Agent Rhue, under DEA file number M6-04-0273 that was utilized in a court proceeding assigned docket number Mag. No. L-04-2287M-01."[2] Myrick Decl., Ex. I (Letter to plaintiff from William C. Little, Senior Attorney, Administrative Law Section, Office of Chief Counsel, DEA, dated June 13, 2013) at 1. However, "[s]ince DEA does not index records based upon a criminal case name or docket number, Mag. No. L-04-2287M-01 [and] CR 5:08-0031-1 [were]

---

[2] A DEA Form 6 is a Report of Investigation ("ROI") and is "used by DEA to memorialize investigative and intelligence activities related to a law enforcement activity." Myrick Decl. ¶ 29.

of no use in identifying investigative records[] or case file(s) that would contain investigative reports and documents that reference plaintiff." *Id.* ¶ 15. DEA staff initially treated plaintiff's request as one for records within DEA Investigative Case File No. M6-04-0273 referencing plaintiff by name. *Id.*, Ex. I at 2. In light of plaintiff's request for "any other investigative reports filed by any other federal agent," DEA staff expanded the search to include "all investigative reports maintained by DEA that referenced [plaintiff] by name." *Id.*, Ex. I at 2.

On June 14, 2013, relying on FOIA Exemptions 3, 7(C), 7(D), 7(E), and 7(F), the DEA released three pages in full, released 285 pages in part, and withheld 201 pages in full. *Id.* ¶ 13; *see generally id.*, Ex. I. A third release by the DEA resulted in disclosure of "portions of materials numbered Page 34, Page 35, Page 53 and Page 57 . . . in further response to [his FOIA] request dated October 14, 2011." *Id.*, Ex. J (Letter to plaintiff from William C. Little dated February 5, 2014) at 1. Certain information had been redacted under FOIA Exemptions 7(E) and 7(F). *Id.*, Ex. J at 1.

### B. Referral to the EOUSA (Request No. 12-2733-R)

The EOUSA received the referral of three pages of records from the DEA on June 25, 2012, and on July 31, 2012, it released these pages in full. Def.'s Mem., Declaration of John W. Kornmeier ¶¶ 4-5.

### C. Referral to ICE (Case No. 2012FOIA15550)

Of the two pages of records referred by the DEA, ICE released both pages in part, relying on FOIA Exemptions 6, 7(C), and 7(E). *Id.*, Declaration of Catrina Pavlik-Keenan ("Pavlik-Keenan Decl.") ¶¶ 6-7.

## II. DISCUSSION

### A. Summary Judgment in a FOIA Case

FOIA cases typically are resolved on a motion for summary judgment. *See, e.g., Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice*, __ F. Supp. 2d __, __, 2014 WL 2604640, at \*2 (D.D.C. June 11, 2014) (citations omitted). The Court grants summary judgment if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In a FOIA case to compel production of records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978)). Summary judgment may be based solely on information provided in an agency's supporting affidavits or declarations as long as they are relatively detailed and describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

### B. The DEA's Search for Responsive Records

"The adequacy of an agency's search is measured by a standard of reasonableness . . . and is dependent upon the circumstances of the case." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal quotation marks and citations omitted). An agency

must "demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). The agency may submit affidavits or declarations that explain in reasonable detail the scope and method of its search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). "The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Id*. at 128.

The DEA's declarant explains that the "[c]riminal investigative files maintained by DEA about individuals . . . of investigative interest are reasonably likely to be found in the DEA Investigative Reporting and Filing System ('IRFS')." Myrick Decl. ¶ 20. IRFS "contains all administrative, general and investigative files compiled by DEA for law enforcement purposes." *Id*. ¶ 21. Investigative case files maintained therein include "[a]ll information compiled during the course of a DEA investigation" relating to either the case subject or to "other individuals . . . suspected of engaging in criminal activity in association with the subject of the file." *Id*. The DEA office commencing an investigation establishes the investigative case file, and its title is "the name of the principal suspect violator or entity known to DEA at the time the file is opened." *Id*. ¶ 22.

"NADDIS is the index to and practical means by which DEA retrieves investigative reports and information from IRFS." *Id*. ¶ 24. An individual is "indexed and identified in NADDIS by [his] name, social security number and/or date of birth." *Id*. ¶ 25. A NADDIS query generates "a list of investigative file number(s) and particular DEA Report[s] of Investigation . . . or other documents by date regarding a particular individual or entity." *Id*. ¶ 24.

The DEA initially construed plaintiff's FOIA request as one "not seeking a single report," but instead "seeking all criminal investigative records that referenced plaintiff's name contained in DEA Investigative Case File No. M6-04-0273." Myrick Decl. ¶ 15. Staff then conducted a search of that investigative file "for all reports and documents that referenced plaintiff's name." *Id.* ¶ 16. Subsequently, using plaintiff's name, date of birth and social security number as search terms, DEA staff queried NADDIS and identified "four . . . investigative case files, including DEA Investigative Case File No. M6-04-0273, that could contain reports and other documents referencing plaintiff." *Id.* ¶ 17. A search of Investigative Case File No. M6-04-0273 yielded 73 pages of records. *Id.* ¶ 18.

As litigation progressed, "it was noted that plaintiff's FOIA request sought 'any other investigative reports filed by any other federal agent.'" *Id.* ¶ 19. His request then was construed as one "seeking all investigative reports maintained by DEA that referenced [him] by name." *Id.* Staff searched the three remaining investigative files and located an additional 489 pages of potentially responsive records. *Id.*

Plaintiff's opposition to defendant's motion is silent as to the adequacy of the DEA's search for responsive records, *see generally* Am. Resp. to Def.'s Mot. for Summ. J. [ECF No. 27], and therefore he failed to demonstrate the existence of a genuine issue of material fact as to the search. Upon review of defendant's submission, the Court concludes that the DEA conducted a reasonable search for records responsive to plaintiff's FOIA request.

## C. Exemptions

### 1. Exemption 3

FOIA Exemption 3 protects records that are "specifically exempted from disclosure by statute" if the statute either "(A)(i) requires [withholding] from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph." 5 U.S.C. § 552(b)(3).

Among the records deemed responsive to plaintiff's FOIA request is a "21-page teletype" that included "information obtained from systems maintained by the United States Department of the Treasury, Financial Crimes Enforcement Network ('FinCEN') and information derived from records filed pursuant to the Bank Secrecy Act, Titles I and II of Public Law 91-508, as amended, codified at 12 U.S.C. § 1829b, 12 U.S.C. §§ 1951-1959, and 31 U.S.C. §§ 5311-5332 ('BSA')." Myrick Decl. ¶ 48. The declarant explains that FinCEN's responsibilities include implementation of the BSA, which among other things authorizes the Secretary of the Treasury to issue regulations "requiring financial institutions to keep records and file reports . . . determined to have a high degree of usefulness in criminal, tax, and regulatory matters." *Id.* ¶ 49. In addition, Treasury "implement[s] anti-money laundering programs and compliance procedures." *Id.* FinCEN "uses the information collected under the BSA, as well as information derived from commercial and law enforcement databases, to support law enforcement investigations." *Id.* Reports collected by FinCEN include Currency Transaction Reports ("CTRs") and Suspicious Activity Reports ("SARs"). *Id.* ¶ 50. The teletype at issue "was derived from CTRs and SARs." *Id.*

The declarant explains that CTRs, which are filed by banks, casinos, and other financial institutions pursuant to regulations promulgated under 31 U.S.C. § 5313, report currency transactions of more than $10,000. Myrick Decl. ¶ 51. SARs, which are filed by financial institutions among others pursuant to regulations promulgated under 31 U.S.C. § 5318(g)(1), report "any suspicious transaction relevant to a possible violation of a law or regulation." *Id*. Generally, neither a financial institution nor the government may reveal to anyone involved in a transaction that a SAR has been filed. *Id*. ¶ 52. However, the declarant states, under 31 U.S.C. § 5319, BSA reports are made "available to governmental entities . . . to support . . . criminal . . . investigations and proceedings." *Id*. ¶ 53.

Under 31 U.S.C. § 5319, the declarant explains, "a [BSA] report and records of reports are exempt from disclosure under [5 U.S.C. § 552]." *Id*. ¶ 55. Pursuant to this authority, a FinCEN regulation, *see* 31 C.F.R. 103-54, "specifically exempt[s] BSA records from FOIA disclosure." Myrick Decl. ¶ 55. For this reason, the DEA withholds the 21-page teletype in full under FOIA Exemption 3 in conjunction with 31 U.S.C. § 5319 and 31 C.F.R. § 103.54. *Id*. ¶ 56. Plaintiff does not oppose this argument.

The Court concludes that the teletype is properly withheld under Exemption 3 because it is derived from reports generated pursuant to the Bank Secrecy Act, and the Act deems such reports exempt from disclosure under the FOIA. *See Rosenberg v. U.S. Dep't of Immigration & Customs Enforcement*, __ F. Supp. 2d __, __, 2014 WL 413569, at *13 (D.D.C. Feb. 3, 2014) (withholding reports created pursuant to the BSA); *Marcusse v. U.S. Dep't of Justice*, 959 F. Supp. 2d 130, 143 (D.D.C. 2013) (withholding by the FBI of "information obtained through the BSA during the course of its criminal investigative activities"); *Berger v. Internal Revenue Serv.*, 487 F. Supp. 2d 482, 496 (D.N.J. 2007) (finding that information "derived or extracted directly

from [BSA] reports" was properly withheld under FOIA Exemption 3), *aff'd*, 288 F. App'x 829 (3d Cir. 2008), *cert. denied*, 557 U.S. 903 (2009).

2. Exemption 7

a. Records Compiled for Law Enforcement Purposes

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. *See* 5 U.S.C. § 552(b)(7); *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982). "To show that the disputed documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

The DEA's declarant explains that the agency's "investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and Control Act of 1970 . . . which authorizes DEA to . . .investigat[e] incidences involving the trafficking in controlled substances, dangerous drugs and precursor chemicals and the violators who operate at interstate and international levels," and to "exchange . . . information in support of drug traffic prevention and control." Myrick Decl. ¶ 57. Records responsive to plaintiff's FOIA request "are criminal investigative records . . . compiled during criminal law enforcement investigations of the plaintiff and several third parties." *Id.* ¶ 58.

ICE's declarant explains that the entity "is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens," and in its

10

investigative capacity, it "is responsible for identifying and eliminating vulnerabilities within the nation's borders." Pavlik-Keenan Decl. ¶ 22. "ICE is tasked with preventing any activities that threaten national security and public safety by investigating the people, money, and materials that support illegal enterprises." *Id.*

It is apparent from the DEA's and ICE's declarations and from the nature of the FOIA request itself that the responsive records were compiled for law enforcement purposes. Thus, the defendant easily meets its initial burden by establishing that the records at issue are law enforcement records for purposes of FOIA Exemption 7.

### b. Exemption 7(C)

FOIA Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) ("In deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption 7(C), we must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect.") (internal quotation marks and citation omitted). "On one side of the scale, the exemption protects the privacy interests of all persons mentioned in law enforcement records, whether they be investigators, suspects, witnesses, or informants." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007). On the other side is the public interest in disclosure, *see id.*, and "[i]t is well established that the only public interest relevant for purposes of Exemption 7(C) is

one that focuses on the citizens' right to be informed about what their government is up to."

*Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (citing *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749,773 (1989) (additional citations omitted).

### *i.* DEA[3]

The DEA withholds the names of and identifying information about third parties "who were involved or associated with plaintiff and a law enforcement investigation," that is, "law enforcement personnel, suspects, co-defendants, witnesses, potential witnesses and confidential sources." Myrick Decl. ¶ 60.

With respect to the "DEA Special Agents, DEA laboratory personnel, and other Federal law enforcement officers," the declarant explains that "undue invasions of privacy, harassment and humiliation" would result "from disclosure of their identities in the context of a criminal law enforcement investigation." *Id.* ¶ 63. She further explains that the Special Agents, laboratory personnel and other federal law enforcement officers "were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff and other individuals." *Id.* ¶

---

[3] The DEA "withhold[s] the names and identities of third-parties or information that would disclose the identity of a confidential source" under FOIA Exemption 7(F) in conjunction with FOIA Exemption 7(C) or 7(D). Myrick Decl. ¶ 82. The declarant explains that, according to DEA reports, plaintiff and his associates "were involved in instances of violence in connection with their illicit trafficking in drugs." *Id.* ¶ 84. In light of this activity, and plaintiff's conviction of "offenses surrounding the importation of marijuana across the Mexican border with the United States, the agency deems it to be "reasonably anticipated that, if through the FOIA, the identity of any third-party, DEA agent or a confidential source was disclosed, [that] individual, [his or her] family members or associates could [suffer] serious injury or death." *Id.* This explanation by itself justifies the decision to withhold information under FOIA Exemption 7(F). However, because the Court concludes that the same information properly is withheld under FOIA Exemptions 7(C) and 7(D), the Court need not discuss FOIA Exemption 7(F) further. *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

64. These third parties "were, and possibly still are, in positions of access to information regarding official law enforcement investigations," and if their identities were disclosed, "they could become targets of harassing inquires for unauthorized access to information pertaining to ongoing and closed investigations." *Id.* The DEA finds no "discernible public interest in disclosure of the individuals' identities . . . that would outweigh the privacy interests of any third party." *Id.* ¶ 62.

*ii.* ICE[4]

ICE's declarant describes the two pages of records referred by the DEA as "records . . . pertain[ing] to the investigation of [p]laintiff's removal procedures." Pavlik-Keenal Decl. ¶ 22. Withheld from these pages are the name and telephone number of a law enforcement officer. *Id.* ¶¶ 18, 24. The declarant explains that, if the officer's identity were released, he or she "could become [a] target[] of harassing inquires for . . . access to information regarding ongoing or closed investigations." *Id.* ¶ 24. For example, disclosure of the officer's identity to "individuals who are of interest to the law enforcement agency or [who] oppose the agency's law mission" could "trigger reprisals [or] harassment" or could "otherwise interfere with the [officer's] performance of [his or her] duties." *Id.* This individual's privacy interest, the declarant states, "clearly outweighs any minimal public interest in the disclosure," *id.*, because "disclosure of [his or her identity] would not inform the public about ICE's performance of its mission . . . or how ICE actually conducts its internal operations and investigations," *id.* ¶ 25.

---

[4] ICE withholds the name and phone number of a law enforcement officer under FOIA Exemption 6 in conjunction with FOIA Exemption 7(C). *See* Pavlik-Keenan Decl. ¶¶ 18-22. The Court concludes that the information falls under the scope of Exemption 7(C), and therefore will not consider the applicability of Exemption 6. *See Roth*, 642 F.3d at 1173.

"Exemption 7(C) recognizes that the stigma of being associated with any law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure." *Shapiro v. Dep't of Justice*, __ F. Supp. 2d __, __, 2014 WL 1280275, at *3 (D.D.C. Mar. 31, 2014) (citations omitted); *see Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984) (noting that "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity."). Accordingly, "unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1206 (D.C. Cir. 1991). Here, plaintiff fails to discuss the exemption, let alone offer any evidence of agency misconduct. Nor does plaintiff demonstrate a public interest of sufficient magnitude to outweigh the recognized privacy interests of the individuals identified in the responsive records. The Court therefore concludes that the names of and identifying information about third parties is properly withheld under FOIA Exemption 7(C).

c. Exemption 7(D)

FOIA Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). There is no general "presumption that a source is confidential within the meaning of Exemption 7(D) whenever the source provides information [to a law enforcement agency] in the course of a criminal investigation." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993). Rather, a source's confidentiality must be determined on a case-by-case basis. *Id*. at 179-80. "A source is confidential within the meaning of [E]xemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Williams v. Fed. Bureau of Investigation*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (internal quotation marks and citation omitted)).

DEA invokes FOIA Exemption 7(D) to protect "source-identifying and source-supplied investigative information," that is, "information and reports that would disclose the identity of and the information provided by an individual who would be considered a confidential source." Myrick Decl. ¶ 66. According to the declarant, information provided by the informant or informants "could subject them, their family members and associates to serious harm, substantial repercussions, and possibly even death." *Id*. ¶ 68.

Because "it could not be ascertained that a source . . . expressly [had been] made a promise of confidentiality," the DEA asserts that the confidential source(s) supplied information under circumstances from which an assurance of confidentiality is implied. *Id*. ¶ 70. The declarant explains that "[p]laintiff was convicted of offenses surrounding the importation of marijuana across the Mexican border with the United States," and in the DEA's experience, "violence is inherit in the illicit trafficking in marijuana and other drugs coming into the United States from Mexico and other countries." *Id*. ¶ 71. "In this case, reports show that associates of plaintiff were involved in instances of violence and [that] the individuals [who] provided

information had knowledge [indicating] a close connection with the drug trafficking." *Id.*
Accordingly, the declarant avers that, "[u]nder these circumstances it was presumed that the
individual(s) would not have provided the information unless he (or they) believed that the
information and his identity (or their identities) would be held in confidence and not released to
plaintiff or the public." *Id.* ¶ 72. The Court concurs. *See, e.g., Stephens v. Dep't of Justice*, __
F. Supp. 2d __, __, 2014 WL 1015803, at *8 (D.D.C. Mar. 18, 2014) (withholding information
about third-party sources who provided detailed information to the FBI about requester and other
suspects involved with a "violent street gang").

### d. Exemption 7(E)

FOIA Exemption 7(E) protects from disclosure law enforcement records "to the extent
that the production of such . . . information . . . would disclose techniques and procedures for law
enforcement investigations or prosecutions, or would disclose guidelines for law enforcement
investigations or prosecutions if such disclosure could reasonably be expected to risk
circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "The first clause of Exemption 7(E) affords
'categorical' protection for 'techniques and procedures' used in law enforcement investigations
or prosecutions." *Pub. Emps. for Envtl. Responsibility v. U.S. Section Int'l Boundary & Water
Comm'n*, No. 11-cv-261, 2012 WL 933709, at *16 (D.D.C. Mar. 20, 2012) (citing *Showing
Animals Respect and Kindness v. U.S. Dep't of Interior*, 730 F. Supp. 2d 180, 199-200 (D.D.C.
2010)). "Exemption 7(E)'s second clause separately protects 'guidelines for law enforcement
investigations or prosecutions if [their] disclosure could reasonably be expected to risk
circumvention of the law.'" *Id.* at *16 (quoting 5 U.S.C. § 552(b)(7)(E)). D.C. Circuit
precedent "sets a relatively low bar for the agency to justify withholding" information under
FOIA Exemption 7(E). *Blackwell*, 646 F.3d at 42. The exemption allows for withholding

information "not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Id.* (quoting *Mayer Brown LLP v. Internal Revenue Serv.,* 562 F.3d 1190, 1193 (D.C. Cir. 2009)).

*i.* DEA

The DEA withholds Geographical Drug Enforcement Program ("G-DEP") and Narcotics and Dangerous Drug ("NADDIS") violator identifier codes under FOIA Exemption 7(E). Myrick Decl. ¶ 75. The declarant explains that G-DEP codes are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator(s), the types and amount of suspected drugs involved, the priority of the investigation and suspected location and scope of criminal activity." *Id.* ¶ 78. "NADDIS numbers are multi-digit numbers assigned to drug violators and suspected drug violators known to DEA and entities that are of investigative interest." *Id.* ¶ 79. Each NADDIS number is unique to a particular violator. *Id.* If the DEA were to release G-DEP codes, the declarant states, "[s]uspects could decode . . . information" to "identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings," and thus "change their pattern of drug trafficking in an effort to . . . avoid detection and apprehension." *Id.* ¶ 80. Disclosure of NADDIS numbers and informant identifier codes, which "are unique and personal to the individual to whom the number applies, . . . could allow violators to avoid apprehension[] and could place law enforcement personnel in danger, since the details of many aspects of a DEA investigation would be disclosed." *Id.* ¶ 81. Disclosure of "details of DEA investigations" would make violators "aware of how to respond in different situations where detection and/or apprehension are eminent [sic]." *Id.*

The Court concludes that this type of information properly is withheld under FOIA

Exemption 7(E). *See Adionser v. Dep't of Justice*, No. 10-27, 2014 WL 1284804, at *1 (D.D.C.

Mar. 28, 2014) (withholding G-DEP codes under FOIA Exemption 7(E)); *Miller v. U.S. Dep't of

Justice*, 872 F. Supp. 2d 12, 28-29 (D.D.C. 2012) (withholding NADDIS numbers and TECS

numbers under FOIA Exemption 7(E)).

The DEA also withholds under Exemption 7(E) "internal DEA and other agency

telephone numbers." Myrick Decl. ¶ 74. These telephone numbers are assigned to DEA

employees, and their release to the public "could enable violators to identify law enforcement

personnel, disrupt official DEA business, subject DEA employees to harassing phone calls and

cause interference with the DEA internal communications network." *Id.* This too, is information

properly withheld under FOIA Exemption 7(E). *See Light v. Dep't of Justice*, 968 F. Supp. 2d

11, 29 (D.D.C. 2013) (withholding "internal nonpublic telephone numbers and web site

addresses used frequently by [FBI] personnel to exchange investigative information").

*ii.* ICE

Under FOIA Exemption 7(E), ICE withholds "investigative techniques and procedures

including: external system identification numbers, and other law enforcement agency database

case numbers, or identifiers, means of access to intra-agency databases to include case file

numbers, event numbers, internal codes, computer function commands, identification numbers,

and other law enforcement codes and numeric references." Pavlik-Keenan Decl. ¶ 27. If this

information were disclosed – specifically information from TECS – one could obtain information

from other law enforcement agencies.[5] *Id.* ¶ 28; *see id.*, Vaughn Index (applying Exemption

7(E) "to protect from disclosure TECS/SECATS Record Identification Number, case number,

TECS/SECATS access codes, and program codes in . . . database recording a law enforcement

investigation). The declarant explains:

> TECS interfaces with many databases belonging to other federal law enforcement agencies. Information from other federal law enforcement databases are communicated to ICE law enforcement officials through TECS. The codes ICE officers use contain law enforcement information such as law enforcement personnel identifying number codes and query codes.

> Law enforcement database codes, to include administrative and computer codes, serve a dual purpose. The codes are not only used for the purposes of indexing, storing, locating, and retrieving information, but also serve to provide information about an investigation. Specifically this information could identify the type and location of the case, the scope and size of the investigation regarding agency resources utilized for the investigation, type of activity under investigation, and location of investigative efforts. These codes and case numbers continue to be used in other ongoing investigations thus relaying the scope of the investigation. Additionally, this information could also be used by persons seeking improper access to law enforcement data to decipher the meaning of the codes, navigate the law enforcement system and compromise the integrity of the data either by deleting or altering information. The quality and quantity of information contained in these records, if disclosed, could impede ongoing investigations . . . .

> These techniques involve cooperative arrangements between ICE and other agencies and inter-agency communications prompting specific actions on the part of agency employees. The disclosure of these techniques and methods could adversely affect future investigations by giving potential subjects of investigations the ability to anticipate the circumstances under which such techniques could be employed in investigations where they may be subjects, and identify such techniques as they are being employed in order to either obstruct the investigation or evade detection from

---

[5] "TECS, formerly known as the Treasury Enforcement Communication System," is the system from which information in the relevant two-page document was obtained. Pavlik-Keenan Decl. 9. The declarant describes SEACATS as the Seized Assets and Case Tracking System. *Id.* ¶ 12

> law enforcement officials. The particulars of the techniques at
> issue are not well known to the public. Additionally, the
> disclosure of this information, if used to obstruct the law
> enforcement investigation or operation, could possibly place law
> enforcement personnel and innocent bystanders in physical danger.

*Id.* ¶¶ 28-30. According to the declarant, "[t]he disclosure of this information serves no public

benefit and would not assist the public in understanding how the agency is executing its statutory

responsibilities." *Id.* ¶ 29. These are the types of information contemplated by the exemption,

and the Court concludes that it properly is withheld under Exemption 7(E). *See Strunk v. U.S.*

*Dep't of State*, 905 F. Supp. 2d 142, 147-49 (D.D.C. 2012) (withholding information about

TECS system and operating programs under Exemption 7(E)); *Skinner v. U.S. Dep't of Justice*,

893 F. Supp. 2d 109, 113 (D.D.C. 2012) (withholding TECS computer access codes); *Bloomer v.*

*U.S. Dep't of Homeland Sec.*, 870 F. Supp. 358, 369 (D. Vt. 2012) (withholding "various codes

and case numbers," including TECS information, under Exemption 7(E)).

### D. Segregability

The FOIA requires that "any reasonably segregable portion of a record shall be provided

to [the requester] after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Stated

differently, all "non-exempt portions of a document must be disclosed unless they are

inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of the Air*

*Force,* 566 F.2d 242, 260 (D.C. Cir. 1977). "So important is this requirement that '[b]efore

approving the application of a FOIA exemption, the district court must make specific findings of

segregability regarding the documents to be withheld.'" *Elec. Frontier Found. v. Dep't of*

*Justice,* 826 F. Supp. 2d 157, 173 (D.D.C. 2011) (quoting *Sussman,* 494 F.3d at 1106)).

The DEA's declarant states that "[a]ll of the responsive information was examined to

determine whether any reasonably segregable information could be released." Myrick Decl. ¶

85. She explains that pages were withheld in full only where the release of any information "(1) would result in the disclosure of no useful information, or incomprehensible words and/or phrases . . . , (2) could result in compromising the identity of and information provided by sources" who provided information under an implied assurance of confidentiality, or "(3) would be an unwarranted invasion of personal privacy when balanced against the public interest in the release of information gathered during the course of a criminal investigation." *Id*. And ICE's declarant avers that she has "reviewed each record line-by-line," Pavlik-Keenan Decl. ¶ 32, and has determined that "all information not exempted from disclosure to the FOIA . . . was correctly segregated and non-exempt portions were released," *id*. ¶ 34.

Based on defendant's supporting declarations and the Vaughn indices, *see generally* Myrick Decl., Ex. K; Pavlik-Keenan Decl., Ex. C, the Court concludes that all reasonably segregable information has been disclosed to plaintiff. *See Abdelfattah v. U.S. Immigration & Customs Enforcement*, 851 F. Supp. 2d 141, 146 (D.D.C. 2012) (supplying an affidavit stating that documents were reviewed line-by-line, a sufficiently detailed Vaughn index, and declarations to explain why each document was properly withheld meets agency obligation regarding segregability)

### III. CONCLUSION

The Court concludes that the DEA conducted a reasonable search for records responsive to plaintiff's FOIA request, that the DEA and ICE properly withheld information under FOIA Exemptions 7(C), 7(D), and 7(E), and that these components have released all segregable information. Defendant thus demonstrates its compliance with the FOIA, and its motion for summary judgment will be granted. An Order accompanies this Memorandum Opinion.

September 9, 2014

THOMAS F. HOGAN
Senior United States District Judge